UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TABERNA CAPITAL MANAGEMENT,                 :    No. 08 Civ. 11355 (DLC)
LLC, and LARRY LATTIG, Litigation Trustee for :
the First Magnus Litigation Trust, as Successor in :
Interest herein to Taberna Capital Management, :
LLC and The Bank of New York Mellon Trust   :
Company, N.A., in its Capacity as Trustee Under :
The Indenture and Property Trustee for the  :
First Magnus TPS Trust                      :
                                            :
                             Plaintiff,  :
                                            :
  - against -                               :
                                            :
GURPREET S. JAGGI,                          :
                                            :
                            Defendant.  :
------------------------------------------------------------x

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

**KANE KESSLER P.C.**
*Attorneys for Defendant*
1350 Avenue of the Americas
New York, New York  10019
(212) 541-6222

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

POINT I.
PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS ......................................... 1

POINT II.
THE SPECIAL RELATIONSHIP NECESSARY FOR A NEGLIGENT
MISREPRESENTATION CLAIM IS LACKING .................................................................... 3

POINT III.
THERE IS NO EVIDENCE THAT JAGGI INTENTIONALLY MISLED TABERNA ...... 4

POINT IV.
PLAINTIFFS CANNOT DEMONSTRATE THAT TABERNA
REASONABLY RELIED ON JAGGI'S REPRESENTATIONS ............................................. 7

POINT V.
PLAINTIFFS HAVE FAILED TO PROVE CAUSATION ...................................................... 8

POINT VI.
PLAINTIFFS HAVE FAILED TO ESTABLISH A BASIS FOR PUNITIVE DAMAGES .. 9

POINT VII.
PLAINTIFFS' ADDITIONAL FACTS ARE IMMATERIAL AND IRRELEVANT ......... 10

CONCLUSION ......................................................................................................................... 11

## TABLE OF AUTHORITIES

|  | Page(s) |
|---|---|

**CASES**

*Aaron Ferver & Sons v. Chase Manhattan Bank,*
   731 F.2d 112 (2d Cir. 1984)..................................................................................4

*Abel v. Paterno,*
   245 A.D. 285, 281 N.Y.S. 58 (1st Dept. 1935)........................................................2

*Bank of Am. Corp. v. Lemgruber,*
   385 F.Supp.2d 200 (S.D.N.Y. 2005).......................................................................2

*Banque Arabe v. Maryland Nat'l Bank,*
   57 F.3d 146 (2d Cir. 1995).....................................................................................4

*Brunetti v. Massalam,*
   11 A.D.3d 280, 783 N.Y.S. 2d 347 (1st Dept. 2004)..............................................7

*Courthouse Corporate Center, LLC v. Schulman,*
   74 A.D.3d 725, 902 N.Y.S.2d 160 (2d Dept. 2010)................................................2

*East Acupuncture, P.C. v. Allstate Ins. Co.,*
   61 A.D.3d 202, 873 N.Y.S.3d 335 (2d Dept. 2009)................................................2

*FAIT v. Regions Financial Corp.,*
   712 F. Supp. 117 (S.D.N.Y. 2010)..........................................................................5

*In re Aggregates, Inc. Sec. Litig.,*
   235 F.Supp. 2d 1063 (N.D. Cal. 2002)...................................................................5

*In re AHT Corp.,*
   292 B.R. 734 (S.D.N.Y. 2003)................................................................................3

*In re Eugenia VI Venture Holdings, Ltd. Litig.,*
   649 F. Supp. 2d 105 (S.D.N.Y. 2008).....................................................................8

*J.P. Morgan v. Winnick,*
   350 F.Supp.2d 393 (S.D.N.Y. 2004).......................................................................3

*JM Vidal, Inc. v. Texdis, USA, Inc.,*
   2010 WL 3528883 (S.D.N.Y. 2010).......................................................................3

*Kimmel v. Schaefer,*
   89 N.Y.2d 257, 652 N.Y.S.2d 715 (1996).............................................................3

*Langenberg v. Sofair*,
     2006 WL 3518197 (S.D.N.Y. 2006) .................................................................................. 9

*M&T Bank Corp. v. Gemstone CDO VII, Ltd.*,
     68 A.D.3d 1747 (4th Dept. 2009) ..................................................................................... 3

*Mallis v. Kates*,
     615 F.3d 68 (2d Cir. 1980) .............................................................................................. 7

*Miner v. New York State Dept. of Correctional Servs.*,
     479 N.Y.S.2d 703 (N.Y. Sup. Ct. 1984) .......................................................................... 2

*Nearpark Realty Corp. v. City Investing Co.*,
     112 N.Y.S.2d 816 (N.Y. Sup. Ct. 1952) .......................................................................... 2

*OnBank & Trust Co. v. Federal Deposit Ins. Co.*,
     967 F.Supp.81 (W.D.N.Y. 1997) ..................................................................................... 7

*Outside Connection, Inc, v. DiGenarro*,
     18 A.D.3d 634, 795 N.Y.S.2d 669 (2d Dept. 2005) ......................................................... 9

*Primavera Familienstiftung v. Askin*,
     130 F. Supp 450 (S.D.N.Y. 2001) .................................................................................... 8

*Rocanova v. Equitable Life Assur. Soc. of U.S.*,
     83 N.Y.2d 603, 612 N.Y.S.2d 339 (1994) ....................................................................... 9

*Swersky v. Dryer & Traub*,
     219 A.D.2d 321, 643 N.Y.S.2d 33 (1st Dept. 1996) ........................................................ 7

*Todd v. Pearl Woods, Inc.*,
     20 A.D.2d 911, 248 N.Y.S.2d 975 (2d Dept. 1964) ......................................................... 7

*Walker v. Sheldon*,
     10 N.Y.2d 401, 223 N.Y.S.2d 488 (1961) ....................................................................... 9

*Wey v. New York Stock Exchange, Inc.*,
     2007 WL 1238596 (N.Y. Sup. Ct. 2007) .......................................................................... 3

*Williams v. Coppola*,
     23 A.D.3d 1012, 804 N.Y.S.2d 172 (4th Dept. 2005) ..................................................... 9

**RULES**

Local Civ. Rule 56.1 ............................................................................................................... 10

## PRELIMINARY STATEMENT

Defendant, Gurpreet Jaggi ("Jaggi") submits this Memorandum in further support of his motion for summary judgment as to the claims of Plaintiffs, Taberna Capital Management, LLC ("Taberna") and Larry Lattig, Litigation Trustee for the First Magnus Litigation Trust ("Lattig") (collectively, "Plaintiffs"). As shown below, Plaintiffs have failed to demonstrate that they have standing or cognizable damages, and their purported assignments of claims do not cure this defect. The relationship between Taberna and Jaggi is insufficient to support a claim for negligent misrepresentation and Plaintiffs have failed to present any evidence to show that Jaggi intentionally concealed or misrepresented facts to Taberna. Indeed, their expert has now conceded a $900 million error that itself defeats Plaintiffs' imagined financial fraud. Plaintiffs have also failed to refute a clear record that Taberna's sophisticated personnel and attorneys received disclosure and notice of every other issue underlying Plaintiffs' claims, and thus cannot prove the required elements of actual and justifiable reliance. Plaintiffs' claims should therefore be dismissed.

## POINT I.
## PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS

Plaintiffs' attempt to show standing misses the point, and fails to cure a fundamental flaw in this suit. Plaintiff Taberna, the recipient of the Questionnaire Response, was not a party to the operative documents, never held the securities, and parted with no money in the TPS Transaction.[1] It has no damages, an essential element of a claim. The parties that did lose money in the transaction -- BONY (the trustee of the Trust that made the loan to FMCI) and other Taberna entities that later held the preferred securities -- lack standing because they were not (nor could they have been) misled by any alleged representation or omission by Jaggi.

Plaintiffs assert that they have standing based on assignments from BONY (the holder of the

---

[1] The "TPS Transaction" refers to the transaction at issue in this action, whereby Taberna entities loaned approximately $25 million to First Magnus Capital, Inc. ("FMCI")

1

334718.1

Note), Taberna Preferred Funding VIII (the Indenture Trustee), and Taberna Equity Funding, Ltd. These assignors, however, have no standing because they were not parties to the alleged misrepresentations and omissions. *See Bank of Am. Corp. v. Lemgruber*, 385 F.Supp.2d 200 (S.D.N.Y. 2005) (holding that investors in holding company lacked standing to bring fraud claims based on transaction the holding company had made); *Abel v. Paterno*, 245 A.D. 285, 281 N.Y.S. 58 (1st Dept. 1935) (subsequent purchasers of stock in cooperative apartments lacked standing to sue based upon misrepresentations made to the original purchasers). If their assignors lack standing, Plaintiffs lack standing. *See East Acupuncture, P.C. v. Allstate Ins. Co.*, 61 A.D.3d 202, 211, 873 N.Y.S.3d 335, 342 (2d Dept. 2009) ("[A]n assignee stands in the shoes of an assignor and thus acquires no greater rights than those of its assignor.").[2]

Plaintiffs contend that it does not matter who the alleged misrepresentations were made to because Taberna was acting as an agent for Taberna Preferred Funding VIII. Plaintiffs have not presented *any* evidence to support this assertion, on which they have the burden of proof. *See Courthouse Corporate Center, LLC v. Schulman*, 74 A.D.3d 725, 727, 902 N.Y.S.2d 160, 162 (2d Dept. 2010) (party asserting that a relationship of agency exists bears the burden of establishing its existence). In fact, such proof cannot exist, because Taberna Preferred Funding VIII *did not exist* until sometime in 2007. *See* Plaintiffs' Rule 56.1 Statement ("PSOF") at ¶ 321; *Cf. Miner v. New York State Dept. of Correctional Servs.*, 479 N.Y.S.2d 703, 704 (N.Y. Sup. Ct. 1984) (a principal may only do through an agent those things that he may do personally). This is fatal to Plaintiffs' argument. *See Nearpark Realty Corp. v. City Investing Co.*, 112 N.Y.S.2d 816 (N.Y. Sup. Ct. 1952) (corporation that had no existence at the time of the alleged misstatements had no standing to sue

---

[2] Plaintiffs' claims rest solely on the Assignments. *See* Plaintiffs' Opposition at 11 ("Pursuant to the Assignments, Plaintiffs are entitled to recover $25 million.") In sum, they claim that: Merrill Lynch initially purchased the trust preferred securities from the First Magnus TPS Trust, providing the funding for the loan to FMCI. Merrill Lynch then transferred the securities to Taberna Preferred Funding VIII, which subsequently transferred them to Taberna Equity Funding on October 25, 2007. All of the above parties allegedly assigned any claims they may have to Taberna Capital and Lattig. Notably absent from Plaintiffs' statement of facts is any evidence that Plaintiff Taberna Capital suffered any actual pecuniary loss as a direct result of the alleged wrong. *See* PSOF ¶¶ 151 and 311-326.

2

because the alleged misrepresentations "with which defendants are charged could not have been made to plaintiff").[3]

## POINT II.
## THE SPECIAL RELATIONSHIP NECESSARY FOR A NEGLIGENT MISREPRESENTATION CLAIM IS LACKING

Relying on *Kimmel v. Schaefer*, 89 N.Y.2d 257, 652 N.Y.S.2d 715 (1996), Plaintiffs argue that liability for negligent misrepresentation may be imposed on individuals possessing "unique or specialized expertise or who are in a special position of confidence and trust with the injured party such that the reliance on the negligent misrepresentation is justified." *Id.* at 263.[4] However, *Kimmel* "did not represent a departure from the traditional understanding that a special relationship is required in order to state a claim for negligent misrepresentation." *J.P. Morgan v. Winnick*, 350 F.Supp.2d 393, 402 (S.D.N.Y. 2004). In *Winnick*, the court specifically found no special relationship between parties to a loan transaction, concluding that the defendants' knowledge, like Jaggi's, amounted to "nothing more than knowledge of the particulars of a company's business and of the true situation underlying the misrepresentations pertaining to that business" and did "not constitute the type of specialized knowledge required to impose a duty of care in the commercial context." *Id.* at 402. Plaintiffs do not cite a single case in which liability was imposed on a party in the context of an arms-length lending relationship.[5]

---

[3] *Wey v. New York Stock Exchange, Inc.*, 2007 WL 1238596 (N.Y. Sup. Ct. 2007), a case on which plaintiffs principally rely, makes clear that a claim for negligent misrepresentation by a third-party may proceed only if, unlike here, an agency relationship existed and the defendant had knowledge of it. Plaintiffs try to overcome this shortcoming by saying that the Questionnaire's reference to Taberna Trust Preferred Securities should have been enough to put Jaggi and FMCI on notice that Taberna Capital was acting for an unknown third-party. However, it clearly did not identify the third party. Nor could it have, because Taberna Preferred Funding VIII did not yet exist.

[4] *Kimmel* is readily distinguishable from the present case. In *Kimmel*, the defendant personally and actively solicited individual investors and induced them to invest in the company on the basis of his expertise in the unique business in which the company was engaged. The relationship between the parties in *Kimmel* is far from the arms-length commercial relationship of the parties in the present case, which involved a complex loan transaction involving equally sophisticated parties.

[5] Other New York courts, citing *Kimmel*, have dismissed negligent misrepresentation claims between sophisticated parties in arms-length business transactions. *See, e.g., JM Vidal, Inc. v. Texdis, USA, Inc.*, 2010 WL 3528883 at *24 (S.D.N.Y. 2010); *In re AHT Corp.*, 292 B.R. 734, 747 (S.D.N.Y. 2003); *M&T Bank Corp. v. Gemstone CDO VII, Ltd.*,

3

## POINT III.
## THERE IS NO EVIDENCE THAT JAGGI INTENTIONALLY MISLED TABERNA

As set forth in Jaggi's moving papers, there is no evidence that Jaggi knew of any misinformation in the Questionnaire Response,[6] which was prepared by the company's legal and accounting personnel knowledgeable on the areas of inquiry, as the law allows and the questionnaire contemplates. Plaintiffs respond with a stew pot of ever-expanding theories, apparently hoping that something might stick or the volume of paper submitted will carry the day. Their assertions, however, do not withstand scrutiny.

Plaintiffs first argue that Jaggi intentionally misrepresented the net equity in the Questionnaire Response, relying solely on an admittedly erroneous and now abandoned expert analysis by Lawrence Morriss (the "July 30 Morriss Report"). *See PSOF* ¶*186* (citing to the July 30 Morriss Report). Morriss has since conceded that his net equity calculation in this report had a "$900 million" error, as detailed in the motion to preclude filed concurrently with this Reply. This renders the sole support for this argument inadmissible. It also itself defeats scienter: Plaintiffs cannot claim that Jaggi knew such equity was overstated, when Morriss' two year, $3.4 million forensic accounting analysis shows it was understated.

Moreover, Plaintiffs do not dispute that the equity amount in the response was the same amount as stated in company's financials, or that FMFC's controller, accounting staff, and auditors prepared the financials and determined the company's reserve practices and GAAP compliance. Likewise, Plaintiffs have offered no evidence that Jaggi did not believe the financial information

---

68 A.D.3d 1747, 1747 (4th Dept. 2009). *See also Banque Arabe v. Maryland Nat'l Bank*, 57 F.3d 146, 158 (2d Cir. 1995); *Aaron Ferver & Sons v. Chase Manhattan Bank*, 731 F.2d 112, 122 (2d Cir. 1984).

[6] The term "Questionnaire Response" refers to FMCI's July 17, 2006 response to a due diligence questionnaire provided by Taberna Securities, which was certified by Jaggi and contains the alleged misrepresentations and omissions at issue in this action.

4

provided to Taberna was accurate. Mere evidence of GAAP violations or insufficient reserves cannot sustain a fraud claim.[7]

Plaintiffs add in their opposition (at 24) a new claim that Jaggi misled FMFC's auditors by describing FMFC's loan sales as "nonrecourse" in a representation letter, thereby concealing from them the representations, warranties, and repurchase provisions applicable to such sales. This new claim is untimely, immaterial, and baseless. It is undisputed that Grant Thornton had copies of the loan purchase agreements for its audits, and its audited financials *expressly stated* that loans were sold subject to standard representations, warranties and potential repurchase obligations. Defendants' Rule 56.1 Statement ("DSOF") at Ex. FF at Notes 2 and 13.

Plaintiffs also argue that Jaggi intentionally concealed from Taberna an investigation by the Arizona Department of Financial Institutions ("ADFI"), audit findings by the Office of the Investigator General ("OIG"), and suspension of an application for a bank charter. The record does not support these assertions.

*ADFI.* The record is undisputed that at the time of the Questionnaire Response, Jaggi knew nothing more of the ADFI investigation than its existence, which he believed was a routine audit. *PSOF ¶ 114 (Jaggi Deposition) at 191:24-192:25.* ADFI issued its Cease and Desist Order (the "C&D") to FMFC on August 2, 2006 – *after* the Questionnaire Response was delivered. It is also undisputed that the C&D was disclosed to Taberna prior to the closing in a memo to Taberna's lawyer summarizing the C&D and potential liability, and that Taberna never sought any additional information relating to the C&D, which was resolved favorably for FMFC shortly thereafter. DSOF at Exs. BB and CC.

---

[7] See *FAIT v. Regions Financial Corp.*, 712 F. Supp. 117, 124-25 (S.D.N.Y. 2010) (dismissing fraud claim for inadequate reserves because loan loss reserves are opinions and judgments about future events, not statements of fact); *In re Aggregates, Inc. Sec. Litig.*, 235 F.Supp. 2d 1063, 1073 (N.D. Cal. 2002) ("even an obvious failure to follow GAAP does not give rise to an inference of scienter.")

5

***OIG.*** The record is undisputed that FMCI disclosed in response to Question 22 of the Questionnaire that the company was involved with OIG investigations, described potential sanctions from the same in the exhibits to the response, and provided all of written reports and drafts from OIG that existed at the time. This included a draft specifically referencing the expected future RESPA findings (issued in 2008) that Plaintiffs now claim Jaggi concealed. Taberna performed no additional investigation into these issues.

***Bank Application.*** Likewise here, the record is undisputed that FMCI disclosed and Taberna knew, prior to close, that the bank application had been postponed, and sought only to confirm that FMFC was not regulated by the OTS or needed its approval for the closing. DSOF at Ex. DD. Taberna's due diligence coordinator testified that if a particular use of the funds were important, Taberna would have included a use restriction, which it did not. DSOF ¶ 55.

In short, Taberna knew of each of these issues, closed the loan, and collected its $250,000.00 origination fee. Importantly, the transaction was not conditioned in any way upon the resolution of or receipt of more information regarding *any* of these issues, which were all known to Taberna.

Finally, Plaintiffs contend that Jaggi defrauded Taberna by "using the funds" to pay his bonuses after the closing. Plaintiffs' alleged proof for their new claim (PSOF ¶93) says no such thing.[8] Regardless, the claim lacks merit because, as noted, the transaction documents do not restrict the post-closing use of funds in any fashion. Plaintiffs have failed to present any evidence that Jaggi personally and intentionally made false statements to or concealed information from Taberna.

---

[8] PSOF ¶ 290 indeed addresses the allegation, but cites to a chart attached to Larry Morriss' report, which is hearsay and, in any event, says nothing about the source of bonuses being Taberna funds. Likewise, Plaintiffs' proof of any "representation" by Jaggi regarding a restricted use of funds are unauthenticated *Taberna* credit memos. PSOF ¶145. Not only is such evidence inadmissible hearsay, it is no evidence of a representation *by Jaggi* in any event.

6

## POINT IV.
## PLAINTIFFS CANNOT DEMONSTRATE THAT TABERNA REASONABLY RELIED ON JAGGI'S REPRESENTATIONS

The cases relied upon by Plaintiffs do not support their proposition that the reasonableness of a party's reliance on the representations of another is a question of fact that cannot be decided on summary judgment. In *Swersky v. Dryer & Traub*, 219 A.D.2d 321, 643 N.Y.S.2d 33 (1st Dept. 1996), the Court determined that the question of the plaintiff's reasonable reliance remained an issue of fact precluding dismissal on a motion to dismiss, not on a motion for summary judgment. Significantly, unlike here, evidence existed that the plaintiff did not have access to the information that was the subject of the alleged fraud. *Id.* at 327. Similarly, in *OnBank & Trust Co. v. Federal Deposit Ins. Co.*, 967 F.Supp.81 (W.D.N.Y. 1997), the court considered only whether the plaintiff's reasonable reliance had been sufficiently pled.[9]

In fact, as more fully set forth in Jaggi's moving papers, summary judgment is warranted where the undisputed evidence demonstrates that a plaintiff's reliance on a defendant's alleged misrepresentations was unreasonable as a matter of law. Here, Taberna was a sophisticated party in a complex commercial transaction. As shown above and in Defendant's Rule 56.1 Statement, Taberna's personnel and attorneys were given notice of all issues that Plaintiffs now claim were concealed, failed to perform any additional inquiry despite FMCI's repeated offers to allow Taberna any additional information or investigation it desired, and did nothing to condition the transaction on resolution of such issues or more information regarding any of them. Glaringly absent in

---

[9] The cases cited by Plaintiffs addressing reasonable reliance in the context of summary judgment motions all are factually distinguishable. *See Mallis v. Kates*, 615 F.3d 68 (2d Cir. 1980) (rejecting charge to jury that plaintiffs had to establish due diligence as an element of fraud claim where plaintiffs had no knowledge of the facts that were the subject of the alleged misrepresentations and observing that New York courts regularly reject claims of reasonable reliance when the alleged misrepresentations concern facts that the plaintiff has the means to discover); *Todd v. Pearl Woods, Inc.*, 20 A.D.2d 911, 248 N.Y.S.2d 975 (2d Dept. 1964) (finding plaintiffs' reliance on misrepresentations unreasonable as a matter of law where plaintiffs were purchasers of homes in a housing development rather than sophisticated parties in complex commercial transaction); *Brunetti v. Massalam*, 11 A.D.3d 280, 783 N.Y.S. 2d 347 (1st Dept. 2004) (finding fraud claim was not subject to summary disposition where case concerned surrender of plaintiff's employment rights based on fraudulent misrepresentations).

7

Plaintiffs' voluminous papers is a single affidavit to the contrary from the Taberna personnel and attorneys who actually conducted the due diligence and reviewed the Questionnaire Responses, audited and interim financial statements, OIG audit reports, and attorney memos specifically addressing information Plaintiffs now say was concealed.

## POINT V.
## PLAINTIFFS HAVE FAILED TO PROVE CAUSATION

Plaintiffs have failed to present any evidence showing that Jaggi's alleged misrepresentations regarding the net equity, GAAP violations, regulatory issues or use of funds bore any relationship to the financial decline of FMCI or FMCI's failure to repay the loan at issue. They thus have failed to prove loss causation.

Plaintiffs' reliance on *Primavera Familienstiftung v. Askin*, 130 F. Supp 450 (S.D.N.Y. 2001), shows the flaws in their argument. In that case, a collateralized mortgage obligation fund failed due to rising interest rates and margin calls by brokers. The defendants represented that the fund would achieve high annual returns from a market-neutral, risk-balanced, low-risk portfolio, which turned out to be false *and directly related* to the plaintiffs' losses. By contrast, Plaintiffs here cannot point to any evidence that FMCI's and FMFC's decline had anything to do with regulatory matters or GAAP violations.

Plaintiffs have also failed to prove any damages suffered by Taberna Capital that have *any* causal link to the claimed misrepresentations. None of the fact statements they cite (PSOF ¶¶151 and 311-26) show that Taberna Capital contributed or lost any monies in the TPS Transaction. They do not refute the testimony set forth in Defendant's Rule 56.1 Statement that Taberna's only loss was the discontinuation of management fees. Such fees would not have existed in the first instance had the transaction not closed, and are thus not recoverable under New York's "out of pocket rule". *See In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105, 121

8

334718.1

(S.D.N.Y. 2008) (damages limited to those which put the defrauded party in the same position it occupied before entering into the transaction and fixes damages as the difference in value between that parted with and that received.). And, as noted above, this defect is not cured through assignments from those entities that did suffer financial loss in the bankruptcy, as those entities possess no actionable fraud claim to assign.

## POINT VI.
## PLAINTIFFS HAVE FAILED TO ESTABLISH A BASIS FOR PUNITIVE DAMAGES

New York courts have routinely dismissed claims for punitive damages as a matter of law where plaintiffs have failed to prove facts demonstrating willful and wanton misconduct directed to the public generally. *See Williams v. Coppola*, 23 A.D.3d 1012, 804 N.Y.S.2d 172 (4th Dept. 2005); *Outside Connection, Inc, v. DiGenarro,* 18 A.D.3d 634, 795 N.Y.S.2d 669 (2d Dept. 2005). Plaintiffs' assertion that they need not demonstrate that Jaggi's conduct was part of a pattern of conduct directed to the public generally is contrary to New York law. *See Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 343-344 (1994) (in cases arising from contractual relationships, punitive damages may *only* be recovered upon proof of tortious conduct that was "part of a pattern of similar conduct directed at the public generally"); *Walker v. Sheldon*, 10 N.Y.2d 401, 405, 223 N.Y.S.2d 488 (1961) (accord).[10]

Plaintiffs point to baseless allegations regarding FMFC's alleged breaches of its agreements with warehouse lenders and Jaggi's certification of allegedly false compliance statements to such lenders to argue that Jaggi's conduct was directed at the public generally. Notably, the facts cited to support these allegations (PSOF ¶¶ 100-124) only discuss FMFC's arrangements with warehouse

---

[10] Plaintiffs cite *Langenberg v. Sofair*, 2006 WL 3518197 (S.D.N.Y. 2006) to argue that the showing of a public wrong is not necessary for a fraudulent inducement claim. *Langenberg* is inapposite as it involved common theft rather than an arms-length contractual relationship. The plaintiff in *Langenberg* was lured into a romantic relationship with the defendant and was induced to transfer funds to investment accounts set up by the defendant, which he then misappropriated. The defendant was also indicted in connection with his scheme, which involved numerous victims and fraudulent statements to the SEC, among other charges. *See id.* at *4-5.

9

334718.1

lenders and make *no reference* to Jaggi. Plaintiffs cannot sustain a punitive damages claim with unsubstantiated allegations regarding other parties and collateral issues. Their claim for punitive damages should therefore be dismissed.

## POINT VII.
## PLAINTIFFS' ADDITIONAL FACTS ARE IMMATERIAL AND IRRELEVANT

Plaintiffs offer *230* paragraphs of purported additional facts (the "Additional Facts") in their Rule 56.1 Statement, apparently hoping that their sheer volume of paper will alone carry their position. The Additional Facts are immaterial and irrelevant red-herrings, and violate Rule 56.1.[11]

Paragraphs 92 through 124 of the Additional fact purport to explain warehouse lending and takeout investor agreements executed by First Magnus Financial Corporation ("FMFC"). This case does not pertain to any alleged breaches of such agreements, nor have Plaintiffs alleged that any such breaches caused any damages. In addition, those agreements were provided to Taberna as part of the document request accompanying the Questionnaire Response.

Paragraphs 125 through 156 merely provide the circumstances surrounding the transaction at issue in this case. Plaintiffs offer hearsay support and falsely state that the parties agreed that the funds from the TPS Transaction were to be used for the creation of a federally chartered bank. There is no evidence in the record of any such agreement or promise. Rather, as noted, Taberna knew the bank application had been postponed, and its due diligence coordinator testified that, if the use of the funds were important, Taberna would have included a use restriction, which they did not. *DSOF* ¶55 and Ex. DD.

Paragraphs 157 through 160 seek to establish that Taberna performed adequate due diligence prior to closing the TPS Transaction. Plaintiffs do not dispute, however, that FMCI provided all information that Taberna requested following the Questionnaire Response.

---

[11] Local Rule 56.1 provides that an opposing party's response to the moving party's statement of facts shall include, "if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried."

10

334718.1

Paragraphs 161 through 186 assert that Jaggi provided a false total equity figure in the Questionnaire Response. As noted above, however, these assertions are not supported.[12] Paragraphs 187 through 288 assert that Jaggi failed to disclose regulatory matters, but miscite the evidence and ignore the undisputed proof that Taberna as aware of such issues and did nothing in response. The remainder of the Additional Facts consist solely of irrelevant assertions relating to activities after the closing of the transaction at issue that have nothing to do with the present motion.

## CONCLUSION

For all of the foregoing reasons and principles of law, Jaggi respectfully requests that the Court grant Jaggi's Rule 56(b) motion and issue an Order awarding summary judgment in favor of Jaggi and dismissing Plaintiffs' action in its entirety and grant such other, further and different relief as to the Court seems just, proper and equitable.

Dated: New York, New York
       November 24, 2010

Of Counsel:

Gary Todd Jackson, Esq.
Lane Davis Oden, Esq.
Michael Joseph Butler, Esq.
**BUTLER, ODEN & JACKSON PC**
145 South 6th Avenue
Tucson, Arizona 85701
(520)-884-0024

Thomas Andrew Zlacket
**THOMAS A. ZLACKET, PLLC**
310 South Williams Blvd.
Suite 170
Tucson, AZ 85711
(520) 750-0250

**KANE KESSLER, P.C.**

By: _____
    S. Reid Kahn (SK-1458)
    Dana Susman (DS-5436)
    Gerard Schiano-Strain (GSS-8021)
    Sarah Bawany Yousuf (SY-0305)
*Attorneys for Defendant*
1350 Avenue of the Americas
New York, New York 10019
(212) 541-6222

---

[12] In addition, Plaintiffs supposed proof that loan reserve deficiencies should have been known by Jaggi is inapposite; it consists solely of e-mails regarding reserve levels long <u>after</u> the TPS Transaction closed. *See* Additional Facts at Paragraph 183 (all e-mails dated in February 2007 or later).

11

334718.1