UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

TABERNA CAPITAL MANAGEMENT,
LLC, and LARRY LATTIG, Litigation Trustee for
the First Magnus Litigation Trust, as Successor in
Interest herein to Taberna Capital Management,
LLC and The Bank of New York Mellon Trust
Company, N.A., in its Capacity as Trustee Under
The Indenture and Property Trustee for the
First Magnus TPS Trust

                              Plaintiffs,

   - against -

GURPREET S. JAGGI,

                              Defendant.

---------------------------------------------------------------x

Civil Action No.
08 Civ. 11355 (DLC)


## DEFENDANT'S REPLY MEMORANDUM
## IN SUPPORT OF MOTION TO PRECLUDE
## PLAINTIFFS' EXPERT TESTIMONY AND REPORTS


**KANE KESSLER P.C.**
*Attorneys for Defendant*
1350 Avenue of the Americas
New York, New York 10019
(212) 541-6222

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... *ii*

PRELIMINARY STATEMENT ........................................................................................ 1

POINT I
MORRISS' NEW OPINIONS CONTAINED
IN HIS REBUTTAL REPORT ARE UNTIMELY............................................................ 1

POINT II
MORRISS' OPINIONS ARE UNRELIABLE ................................................................... 2

POINT III
MORRISS IS NOT QUALIFIED TO TESTIFY
REGARDING REGULATORY MATTERS ..................................................................... 7

MR. JAGGI IS ENTITLED TO SANCTIONS ................................................................. 8

#335667.1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amorgianos v. National R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002)..................................................................................................5

*Kumbo Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)..............................................................................................................5

*SEC v. Lipson*,
   46 F.Supp.2d 758 (N.D. Ill. 1998) ........................................................................................5

#335667.1

## PRELIMINARY STATEMENT

In their Opposition, Plaintiffs spend twenty-five pages of text addressing everything but the key issue in the Motion: Why should Lawrence Morriss, Plaintiffs' expert, be allowed to assert opinions from his "rebuttal" report that are based upon calculations directly contrary to the methods and calculations contained in his initial report? Plaintiffs avoid the issue because there is no good explanation for Morriss' conduct. Unfortunately, litigation is not golf; there are no mulligans. Morriss' blunt change of direction makes all of his opinions fatally unreliable. His reports and testimony should be deemed inadmissible.

## POINT I

### MORRISS' NEW OPINIONS CONTAINED IN HIS REBUTTAL REPORT ARE UNTIMELY

Plaintiffs do not refute that counsel knew of Morriss' calculation error in late August and only addressed it in Morriss' rebuttal report, offered in November. Plaintiffs argue that the failure to disclose is excusable because Morriss was involved in another trial and because Mr. Jaggi's counsel learned about the error on their own. These arguments are unavailing.

First, Morriss' availability is unrelated to counsel's obligations to disclose errors. Once the error was discovered, Plaintiffs' counsel should have immediately disclosed it to defense counsel so any efforts undertaken to address and respond to Morriss' erroneous calculation could have been stopped.[1] Second, defense counsel's later independent discovery of the error does not excuse Plaintiffs' earlier failure to make the necessary disclosure. The error should have been disclosed when Plaintiffs' counsel learned of it, and Plaintiffs should be sanctioned for failing to do so.

---

[1] Obviously, Plaintiffs' counsel failed to disclose the error for a very simple and inappropriate tactical reason: he was hoping defense counsel would not find the error.
#335667.1

Most importantly, the undisclosed error resulted in a rebuttal report that contained new calculations and valuation methods that were not part of Morriss' first report. The new opinions, based on new methods and calculations, are untimely. Mr. Jaggi was not provided a fair opportunity to address the new opinions. The rebuttal report should be stricken, and Morriss should be precluded from testifying regarding the opinions contained in the rebuttal report.

## POINT II

### MORRISS' OPINIONS ARE UNRELIABLE

The alleged facts as reflected in Plaintiffs' Opposition are a hodgepodge of misstatements and half-truths, prepared with the obvious intention of creating a smokescreen of the main issues implicated in the Motion. A brief recap of Morriss' actions relating to the creation of his reports, as supported by his own testimony, is in order.

Morriss was "engaged to opine on whether the total equity of FMCI was approximately $200 million as of May 31, 2006." *Opposition at 9*. After 8500 hours of comprehensive research and analysis, Morriss decided to use the market approach to value FMCI's assets as of the relevant date in order to perform a determination of equity. He noted, "[t]he reason the market approach was the best and most reasonable approach was because it contained the best information to determine a reasonably certain estimate of fair market value for First Magnus." *7/30 Arizona Report at 132*. The market approach provides a relatively straightforward calculation for determining value – EBITDA multiplied times a number that reflects the industry standard for estimating the value of similar companies. Morriss' report contains pages of data and analysis from which he determined the proper multiplier, and his calculation resulted in a conclusion that FMCI had negative equity at the time in question. As such, the total equity

amount contained in FMCI's response to the Due Diligence Questionnaire (the "Due Diligence Response") was, by Morriss' calculations, grossly overstated.

As all parties now know, Morriss' opinion was incorrect because he left the "I" out of "EBITDA." After correcting the admitted math error in the calculation, but still using Morriss' accepted method and multiplier, FMCI actually was worth three times the amount listed in the Due Diligence Response.[2] Morriss' first report therefore establishes that the equity value certified by Jaggi actually was too low.

Obviously not feeling constrained by his earlier opinions, Morriss presented a "rebuttal" report that turned his first report on its head. He adopted an entirely new method of valuation that was wholly different from the "best and most reasonable approach" he used only three months earlier. And, contrary to arguments contained in the Opposition, there is no question Morriss believed he incorporated a new method:

> Q: Those are the two components of your calculation of the reserve that you say should be used in valuing the company?
> A: No.
> Q: All right. Why not? What have I said that's wrong?

---

[2] In their Opposition, Plaintiffs argue that Morriss never supported the notion that his preferred market approach, if calculated with the correct EBITDA, would result in a net equity figure for FMCI of over $600 million. Morriss' own testimony defeats Plaintiffs' argument:
> Q: Turn to page 141 in the prior exhibit. That's your math in the first report, right?
> A: Yes.
> Q: Okay. And the erroneous entry is FMFC consolidated cash flows, correct?
> A: Yes.
> Q: And erroneous because it does not include the interest from tab four in the report?
> A: That's correct.
> Q: All right. Well, if you would, add that interest back in and tell me what the resulting math is for the asset valuation?
> A: Do you have a calculator?
> Q: Yes.
> ...
> Q: What is the resulting value of First Magnus's assets as of June 30, 2006?
> A: The equity would be 674 million, 135.
> Q: That's the resulting value of the equity in First Magnus as of June 30, 2006?
> A: Yes, under this calculation.

*Morriss Deposition at 50, Lines 8-21.*

#335667.1                                3

> A: Because I'm adopting the other methodology in my supplemental and rebuttal report.

*Morriss Deposition at 80, Lines 11-18.*

> Q: The supplemental report was based upon foreclosure analysis, a different analysis?
> A: That's correct.

*Morriss Deposition at 80, Lines 22-25.*

> Q: If I understand you correctly, you've issued a new market approach that uses Mr. Obrien's [sic] income approach to determine a revised multiple for your market approach?
> A: Sure. Yeah.

*Morris Deposition at 47, Lines 17-21.* With his new method, Morriss contends in his rebuttal report that the EBITDA actually should be lower than the EBITDA from his first calculation, as corrected for his error. Incredibly, the rebuttal report also provides for a different market multiplier that is almost four times smaller than before, even though Morriss does not claim he made any errors in relation to the multiplier in his original report.[3] With these two huge changes, Morriss again was again able to conclude that the equity value as of May 31, 2006 was negative.

These facts are critical and undeniable. It is not disputed, nor does the Opposition refute, that Morriss' second method of calculating value is not based on any standard or accepted valuation method. His "implied" market approach is foreign to the valuation community. As Morriss himself proclaimed, "there isn't going to be anything exactly like that in any piece of literature." *Morriss at 61.* More tellingly, Morriss has never used his second valuation method in any other context. *Morriss at 69.* Morriss essentially created his own valuation method for the purposes of disproving the results derived from the generally accepted valuation method he

---

[3] Interestingly, Plaintiffs state in their Opposition that Morriss' mistake was merely an oversight, and not a defect in the methodology Morriss used in his first report. *See Opposition at 15.* Why, then, did Morriss change the multiplier?

#335667.1                                    4

used in his first report. The Opposition seeks to minimize this glaring problem by arguing that the rebuttal report's calculation is not a different method. But, Morriss plainly believes he indeed has used a completely different method the second time around. This method admittedly is his own creation and is not recognized in the industry.

Plaintiffs' Opposition contains a remarkable explanation for Morriss' clear abandonment of the market approach for the method he made up to support his rebuttal report. Plaintiffs boldly proclaim that, with Morriss' EBITDA error corrected, the market approach simply results in a number that is too high. "If I saw the error and caught the error before my valuation was finished, that would have clued me to this would be an irrational value, and then I would have made sure that the valuation reflected what would have been a more reasonable and rational value." *Opposition at 18, Footnote 10*. When asked why he believed the corrected conclusion was irrational, he stated, "[i]t makes no sense at all that this company would be solvent." *Opposition at 17*. Morriss simply would not have been satisfied with any method that resulted in positive total equity. He reached his conclusion before any analysis was performed.

Morriss' rebuttal report violates every benchmark of reliability for expert opinions. An expert's work must be rooted in accepted principles of the relevant field. *SEC v. Lipson*, 46 F.Supp.2d 758, 764 (N.D. Ill. 1998). Morriss made up his valuation method. An expert must use methods he acknowledges are proper. *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 268 (2d Cir. 2002). Morriss acknowledged the market approach as proper, describing it as the "best and most reasonable" approach, yet later rejected it in his rebuttal. And an expert should incorporate methods that have been subjected to peer review and are used in the expert's work outside the scope of litigation. *Kumbo Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The valuation method contained in Morriss' rebuttal report cannot be found in any literature, nor

#335667.1                                5

has he ever used it in any other context than this litigation to reach a predetermined result of insolvency.

On a more fundamental level, Morriss' testimony is patently unreliable because he blatantly contradicts himself. His rebuttal report does not attack other experts' testimony; it essentially challenges and discredits <u>his own chosen valuation method and calculations</u>. It is well settled that contradictory affidavits from the same person can be stricken in litigation, and this scenario is no different. If Morriss himself does not consistently believe the accuracy of the methods he employs and the conclusions derived from them, he certainly should not be entitled to testify in front of a jury to <u>any</u> opinions or conclusions. More importantly, Morriss has made it very clear that no method used to determine FMCI's value is appropriate if it does not result in a conclusion of insolvency. If *Daubert* and its progeny stand for anything, they stand for the notion that data, experimentation and analysis should be used to reach conclusions, not vice versa.

Plaintiffs' Opposition attempts to avoid the elephant in the room – the huge error in Morriss' report and the ensuing contradictory rebuttal report – by continuing their well-worn mantra that Mr. Jaggi made misrepresentations in the Due Diligence Response, and loan loss reserves were not accounted for in accordance with GAAP. These allegations are irrelevant to the Motion. This Motion strictly addresses why the "best and most reasonable" method for determining total equity is abandoned by Plaintiffs after it reveals that the total equity figure contained in the Due Diligence Response is actually grossly understated. Morriss did not receive any additional financial facts relating to FMCI between his July report and his November report, and his initial conclusions, therefore, should not have changed. It is Morriss' credibility that is at

issue in this Motion, not Mr. Jaggi's, and the continued attacks against Mr. Jaggi in the Opposition are nothing more than a diversion.

Morriss unquestionably took a 180-degree turn between his two reports after the calculation contained in his first report irrefutably proved up Mr. Jaggi's defense. The rebuttal report is nothing more than a contrivance. Morriss' creation of his own valuation method to raise Plaintiffs' case from the ashes of his first report is the very conduct *Daubert* seeks to stop. Morriss' reports should be deemed inadmissible, and he should not be allowed to testify at trial.

## POINT III

### MORRISS IS NOT QUALIFIED TO TESTIFY REGARDING REGULATORY MATTERS

Plaintiffs miss the point of the challenge to Morriss' qualifications to testify regarding regulatory matters. As Plaintiffs admit, Morriss was engaged to "perform a forensic investigation of FMFC to identify the existence and nature of any ongoing regulatory proceeding or governmental investigations." *Opposition at 9*. However, Morriss' report goes well beyond identifying the existence of investigations. He offers his opinion that the information he alleges FMCI failed to disclose in the Due Diligence Response would have been material to a lender under the circumstances. Morriss is not qualified to offer these opinions.

Plaintiffs' claims relating to the regulatory matter require proof of two issues. First, Plaintiffs must show that regulatory matters existed at the time the Due Diligence Response was submitted that were not contained in the response. Second, Plaintiffs must establish that any such omissions would have been material to a reasonable lender under the circumstances. The first component requires no expert testimony. The second component requires the testimony of an expert knowledgeable in the due diligence process who has been involved in lending decisions.

#335667.1                                    7

Plaintiffs clearly seek to have Morriss testify to the materiality of the alleged omissions. He simply is not qualified to provide those opinions. He has never worked for a lender, he has never participated in the due diligence of an actual loan, nor has he ever participated in the process of determining whether a commercial loan should be made. Morriss' "forensic accounting perspective" sheds no light on whether a reasonable lender would have changed any lending decisions based upon the alleged omissions. Plaintiffs' Opposition provides no explanation for allowing an accountant to testify relating to lending decisions. Morriss should be precluded from testifying about any such issues.

## MR. JAGGI IS ENTITLED TO SANCTIONS

Sanctions against Plaintiffs clearly are appropriate because they purposefully withheld their knowledge of the huge error in Morriss' initial report. Plaintiffs' Opposition establishes that counsel knew of the error, but made a conscious decision to forego disclosing it. In addition to allowing Mr. Jaggi a partial recovery of the costs he unnecessarily incurred to deal with the known error, sanctions should be assessed to discourage any similar misconduct by Plaintiffs' counsel in the future.

Dated: New York, New York
       December 22, 2010

| | |
|---|---|
| Of Counsel: | **KANE KESSLER, PC** |
| | By: *S. Reid Kahn* |
| Gary Todd Jackson | S. Reid Kahn (SK-1458) |
| Lane Davis Oden | Dana Susman (DS-5436) |
| Michael Joseph Butler | Gerard Schiano-Strain (GSS-8021) |
| **BUTLER, ODEN & JACKSON, PC** | Sarah Bawany Yousuf (SY-0305) |
| 145 South 6th Avenue | *Attorneys for Defendant* |
| Tucson, Arizona  85701 | 1350 Avenue of the Americas |
| Phone: 520-884-0024 | New York, New York  10019 |
| Fax: 520-884-0025 | Phone: 212-541-6222 |
| | Fax: 212-245-3009 |

#335667.1                                                       8

Thomas Andrew Zlaket
**THOMAS A. ZLAKET, PLLC**
310 South Williams Boulevard
Tucson, Arizona 85711
Phone: 520-750-0250
Fax: 520-750-0243


To:   Jamie Welton
      Robert M. Castle, III
      **LACKEY HERSHMAN, LLP**
      3102 Oak Lawn Avenue, Suite 777
      Dallas, Texas 75219
      jrw@lhlaw.net
      rmc@lhlaw.net

      Suzan Jo
      **DUANE MORRIS, LLP**
      1540 Broadway
      New York, New York 10036-4086
      sjo@duanemorris.com

*(Co-Counsel for the Plaintiff,*
  *Taberna Capital Management, LLC)*

      Patrick Matusky
      Christopher Soriano
      **DUANE MORRIS, LLP**
      1940 Route 70 East, Suite 200
      Cherry Hill, New Jersey 08003
      pmatusky@duanemorris.com
      csoriano@duanemorris.com

*(Co-Counsel for the Plaintiff,*
  *Taberna Capital Management, LLC)*